NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 18, 2009[*]
Decided August 20, 2009

**Before**

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 09-2285

| | |
|---|---|
| | Appeal from the |
| RICHARD HOEFT, | United States District Court for the |
| *Plaintiff-Appellant*, | Eastern District of Wisconsin. |
| | |
| *v.* | No. 09 CV 0221 |
| | |
| BRIAN DOMMISSE, et al., | Charles N. Clevert, Jr., |
| *Defendants-Appellees*. | *Judge*. |

No. 09-2290

| | |
|---|---|
| | Appeal from the |
| RICHARD HOEFT, | United States District Court for the |
| *Plaintiff-Appellant*, | Eastern District of Wisconsin. |
| | |
| *v.* | No. 09 CV 0238 |
| | |
| RICHARD DAVIES, et al., | Charles N. Clevert, Jr., |
| *Defendants-Appellees*. | *Judge*. |

---

[*]The defendants in these consolidated cases were not served with process in the district court and are not participating in these appeals. After examining the appellant's briefs and the records, we have concluded that oral argument is unnecessary. *See* FED. R. APP. P. 34(a)(2).

**O R D E R**

After Richard Hoeft was released from prison in Wisconsin, he filed two related lawsuits arising from his participation in a work-release program. In each lawsuit Hoeft sought and received leave to proceed *in forma pauperis*, but both times the district court immediately dismissed the complaint under 28 U.S.C. § 1915(e)(2) for failure to state a claim. Hoeft appeals both dismissals, and we have consolidated the cases for decision because the claims are similar and two of the defendants overlap. Hoeft's complaint in appeal No. 09-2290 alleges that he was exposed to unsafe working conditions at Derco Manufacturing, Inc., and that Richard Davies, his supervisor at Derco, fired him with backing from prison employees Candace Buwalda and Mark Ramsey when he threatened to contact the Occupational Health and Safety Administration ("OSHA"). Hoeft's complaint in appeal No. 09-2285 alleges that Mayville Engineering Company, Inc., a different employer, fired him when he announced he would be seeking worker's compensation for a job-related injury. The second complaint further alleges that Buwalda and Ramsey conspired with Mayville and fellow prison employees Brian Dommisse and Chuck Larson to thwart Hoeft's claim for benefits. We conclude that the complaint involving Mayville Engineering was properly dismissed, but we vacate the dismissal of Hoeft's other lawsuit and remand for further proceedings.

At this stage we must accept as true the allegations in Hoeft's complaints. *See Vill. of DePue, Ill. v. Exxon Mobil Corp.*, 537 F.3d 775, 782 (7th Cir. 2008). During the first half of 2008, Hoeft participated in the work-release program at Fox Lake Correctional Institution. In February and March he worked at Derco Manufacturing, where Davies refused his requests for safety equipment, including goggles, gloves, and a respirator. Hoeft wanted the goggles to shield his eyes from the debris of a faulty table saw and a metal grinder, and the respirator and gloves to protect himself from caustic chemicals and paint fumes that caused a severe cough and irritated his skin and eyes. When Hoeft told Davies that he would report these conditions to OSHA, Davies threatened to fire Hoeft and then to report his purported insolence to Ramsey and Buwalda, the coordinators of the work-release program, in order to keep Hoeft from getting another assignment. Undeterred, Hoeft took his complaint to Buwalda and Ramsey, who responded that Hoeft would be sorry if he gave Davies any more trouble. Davies then fired Hoeft on March 24.

After that Hoeft was reassigned to Mayville Engineering. On April 28 he told his supervisor that he was experiencing symptoms of carpal tunnel syndrome. The supervisor replied that Hoeft could not prove that the pain in his hands, wrists, and forearms was work related and ordered him to get back to work. The next morning Hoeft disclosed his symptoms to Ramsey, who promised to contact Mayville and assured Hoeft that he would

be covered by worker's compensation. Several hours later, however, Hoeft learned from Dommisse, a captain, that someone from Mayville had called about Hoeft's condition. When Hoeft informed Dommisse that he "didn't see how he could" work at Mayville any longer given the severity of his pain and that he would apply for worker's compensation instead of returning to his job, Dommisse angrily replied that Hoeft would not "collect worker's comp. on Mayville." Dommisse took Hoeft to Larson, a prison physician, who conducted a cursory examination. Before the end of the day Hoeft received a letter from Dommisse announcing Dr. Larson's conclusion that his ailments were not work related and telling him that he no longer could participate in the work-release program because his status had been downgraded to light duty. Hoeft also was fired by Mayville that day. He later confronted Buwalda and Ramsey, who said they had discussed the matter with Dommisse, Larson, and a Mayville representative. Everyone, explained Buwalda and Ramsey, agreed with Dr. Larson that Hoeft's carpal tunnel was not work-related. The two coordinators rejected Hoeft's request to get an opinion from an outside doctor, and they emphasized that Hoeft would not be permitted to jeopardize the prison's work-release contract with Mayville by filing a claim for worker's compensation.

Hoeft filed both lawsuits in March 2009. His complaint involving Derco Manufacturing claims that the company and Davies violated federal and state law by maintaining an unsafe workplace and retaliating when he complained to Davies and threatened to contact OSHA. The complaint also claims that the actions of Davies, Buwalda, and Ramsey violated Hoeft's rights under the First Amendment. In dismissing the lawsuit for failure to state a claim, the district court reasoned that Hoeft's discharge in retaliation for "internal complaints about workplace conditions" did not violate federal law, and that his complaint, even read liberally, did not otherwise provide sufficient detail to "indicate how each defendant violated his federal rights." The court did not discuss possible claims arising under state law.

Hoeft's complaint involving Mayville Engineering principally claims that the company and four prison employees violated the Constitution by impeding Hoeft's "right" to collect worker's compensation. The complaint also claims that the actions of the defendants violated the Americans with Disabilities Act ("ADA"), *see* 42 U.S.C. § 12112(a), and that Mayville wrongfully fired Hoeft due to a work-related injury. In dismissing this complaint, the district court questioned, but did not decide, whether Hoeft had a federally protected interest in state-law benefits. The court reasoned, instead, that Hoeft's factual recitation undercuts his claim that the defendants had interfered with his pursuit of a claim for benefits. The court added that Hoeft could not have a claim under the ADA because he did not allege that any defendant had denied him access to services, programs, or activities on account of an alleged disability. The court did not discuss the claim against Mayville for wrongful termination, which the court characterized as a claim arising under state law.

We start with Hoeft's job at Derco Manufacturing. On appeal Hoeft argues that the district court erred in dismissing that lawsuit because, Hoeft says, his complaint describes a conspiracy between Davies, Buwalda, and Ramsey to terminate his employment on account of his threat to notify OSHA about unsafe working conditions at Derco. Our review of a dismissal under § 1915(e)(2)(B)(ii) is de novo, *DeWalt v. Carter*, 224 F.3d 607, 611 (7th Cir. 2000), and we will overturn the dismissal of Hoeft's pro se complaint if a generous reading allows us to infer that it identifies the parties, purpose, and approximate dates of a plausible conspiracy to violate the constitution or federal law, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007); *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007); *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006).

The Occupational Health and Safety Act of 1970, 29 U.S.C. §§ 651-678, provides a comprehensive regulatory framework for promoting workplace safety. *See Jeter v. St. Regis Paper Co.*, 507 F.2d 973, 976 (5th Cir. 1975); *Nat'l Roofing Contractors Ass'n v. Brennan*, 495 F.2d 1294, 1295 (7th Cir. 1974). A business may be subject to administrative or judicial sanctions if management ignores OSHA safety standards or retaliates against workers who alert OSHA to unsafe conditions. *See* 29 U.S.C. §§ 658(a), 659, 660(b) & (c). But only the Secretary of Labor may sue to enforce the Act, which does not provide individual employees with any express or implied right of action. *Mason v. Ashland Exploration, Inc.*, 965 F.2d 1421, 1425 (7th Cir. 1992); *George v. Aztec Rental Ctr., Inc.*, 763 F.2d 184, 186 (5th Cir. 1985); *Taylor v. Brighton Corp.*, 616 F.2d 256, 264 (6th Cir. 1980). Accordingly, Hoeft's allegations do not state a claim under the Act against any defendant.

On the other hand, workplace safety is a matter of public concern, and courts have acknowledged that an employee's complaints about job hazards may qualify as protected speech. *See Coszalter v. City of Salem*, 320 F.3d 968, 974 (9th Cir. 2003); *Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 211-12 (2d Cir. 2002); *Lee v. Nicholl*, 197 F.3d 1291, 1294-96 (10th Cir. 1999). And though Hoeft does not contend that Derco is a state actor by virtue of employing inmates on work release, a private actor can nonetheless be liable under 42 U.S.C. § 1983 if that individual or entity conspires with a state actor to violate the plaintiff's constitutional rights. *Reynolds*, 488 F.3d at 764; *Mullin v. Gettinger*, 450 F.3d 280, 284 (7th Cir. 2006); *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 783 (9th Cir. 2001).

Buwalda and Ramsey did not terminate Hoeft's employment at Derco Manufacturing. And Davies, who did fire Hoeft, is not a state actor. As Hoeft appears to recognize, then, his lawsuit will go forward only if we may infer that Davies sought and received a green light from Buwalda and Ramsey before firing Hoeft in retaliation for his

complaints about unsafe workplace conditions. The question is close, but we conclude that Hoeft's complaint, read liberally, sufficiently raises that inference. Hoeft certainly identifies workplace conditions that from our lay perspective, might be characterized as unsafe. And he alleges that when he confronted Davies about those conditions, he was told that if he contacted OSHA, he would be fired and that Davies would see to it that Buwalda and Ramsey would keep him from getting another work-release assignment. Ramsey and Buwalda, for their part, afterward warned Hoeft that he would be sorry if he further troubled Davies, who then fired Hoeft. Although Hoeft never uses the word "conspiracy" or says explicitly that Davies fired him after reaching an understanding with Buwalda and Ramsey, the substance of Hoeft's separate conversations first with Davies and then with the two prison employees raises that inference, as does the fact that Davies did not fire Hoeft until after the program coordinators had warned Hoeft not to make any more trouble for Davies. We note also that in his complaint Hoeft cites 42 U.S.C. § 1985, and while that statute provides a civil remedy only for civil-rights conspiracies that are class based, *see Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); *Nowicki v. Ullsvik*, 69 F.3d 1320, 1325 (7th Cir. 1995), the reference imparts Hoeft's intention to plead a conspiracy claim. Accordingly, we conclude that Hoeft states a First Amendment conspiracy claim against Derco, Davies, Buwalda, and Ramsey. On remand the district court should allow that claim to proceed and also assess in the first instance whether Hoeft's complaint raises any supplemental state-law claims against Derco and Davies. *See Morfin v. City of E. Chi.*, 349 F.3d 989, 1007 n.17 (7th Cir. 2003).

We reach a different conclusion about Hoeft's lawsuit involving Mayville Engineering. On appeal Hoeft abandons his ADA claim and his claims against Mayville. He argues only that the district court erred in dismissing what he describes as a conspiracy between Dommisse, Larson, Buwalda, and Ramsey to prevent him from filing a claim for worker's compensation in order to protect the prison's relationship with Mayville.

We agree with the district court that Hoeft's complaint fails to state a cognizable conspiracy claim because his allegations do not plausibly suggest that the four prison employees engaged in conduct that violated federal law. In his complaint Hoeft makes a passing reference to the First Amendment, but under existing precedent a conspiracy aimed at getting Hoeft fired from Mayville after he announced his intention to apply for worker's compensation would not violate the First Amendment: An employee's desire for an award of individualized benefits for a specific job-related injury implicates only a personal interest and not a matter of public concern. *See McElroy v. Lopac*, 403 F.3d 855, 858-59 (7th Cir. 2005); *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1226-27 (6th Cir. 1997); *see also Bridges*, 557 F.3d at 552 n.13 (declining to decide whether renunciation of public-concern standard for most forms of prisoner speech should apply equally to speech by a prisoner-employee). Moreover, even if Hoeft's pain was attributable to his brief

employment at Mayville, the district court correctly recognized that by Hoeft's account, the defendants did nothing to prevent him from filing a claim for worker's compensation. Hoeft says that he was fired "over the workers compensation issue," but, in fact, the premise of Hoeft's complaint is that he intended to apply for worker's compensation *instead* of returning to his job at Mayville. Indeed, Hoeft did not lose his job at Mayville the day he discussed with his supervisor whether his pain was job-related; rather, he lost his job the following day when he did not show up for work and told Dommisse that the pain he was experiencing *prevented* him from working at Mayville. And Hoeft has never alleged that after his job ended, he tried to file a claim but was thwarted by the defendants or that they punished him for trying. Thus, whether we view Hoeft's claim as arising under the First Amendment or—following the district court's lead—under the Due Process Clause, the result is the same: The prison employees did not take any retaliatory action or do anything to impede Hoeft from exercising any right. Accordingly, this lawsuit was properly dismissed.

There remains one additional matter. Hoeft argues in these appeals that Judge Clevert, who is African-American and presided over both lawsuits, should have recused himself. Hoeft explains that he espouses "Aryan beliefs" and that Judge Clevert had to know about those beliefs because he presided over—and dismissed all but one of—Hoeft's many prior lawsuits. But judges are presumed to rise above biasing influences, *Tezak v. United States,* 256 F.3d 702, 718 (7th Cir. 2001), and Hoeft offers no reason to question Judge Clevert's ability to be fair. Hoeft seizes upon the dismissal of his earlier cases, but adverse rulings do not establish bias. *See United States v. Morgan,* 384 F.3d 439, 444 (7th Cir. 2004); *Grove Fresh Distrib., Inc. v. John Labatt, Ltd.*, 299 F.3d 635, 640 (7th Cir. 2002).

Accordingly, the judgment in appeal No. 09-2290 is **VACATED**, and that case is **REMANDED** for further proceedings consistent with this order. The judgment in appeal No. 09-2285 is **AFFIRMED**.