**Henry BRIONES, Plaintiff,**

v.

**ASHLAND, INC., Defendant.**

**No. 01–CV–11058–MEL.**

United States District Court,
D. Massachusetts.

Sept. 20, 2001.

Marisa A. Campagna, Boston, MA, for Henry K. Briones, Plaintiffs.

Brian H. Lamkin, Edwards & Angell, Timothy P. Van Dyck, Edwards & Angell,LLP, Boston, MA, for Ashland, Inc., Defendants.

*MEMORANDUM AND ORDER*

LASKER, District Judge.

Henry Briones brings this action for wrongful termination of employment under Massachusetts common law and seeks damages for lost wages and emotional dis-

tress. Briones, a truck driver, contends that he was fired in retaliation for threatening to report Ashland's alleged refusal to affix hazardous materials placards to its truck trailers. Because failure to attach the placards violates state and federal transportation laws and regulations, Briones claims firing him violated public policy.

Ashland moves to dismiss Briones' complaint for failure to state a claim, Fed. R.Civ.P. 12(b)(6), on the grounds that: (1) Massachusetts courts do not authorize law suits based on a "public policy" exception to at-will contracts when specific legislative remedies exist; and (2) the Surface Transportation and Assistance Act, 49 U.S.C. § 31105, ("STAA") preempts Briones common law cause of action.

Ashland's motion to dismiss is denied.

## I. The Public Policy Exception

■ At-will employment contracts allow employers to terminate employment for almost any reason, but exceptions exist to protect employees fired contrary to a public policy. Employers cannot fire at-will employees "for asserting a legally guaranteed right (e.g., filing worker's compensation claim), for doing what the law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g., committing perjury)." *Smith–Pfeffer v. Superintendent of the Walter E. Fernald State School,* 404 Mass. 145, 149–50, 533 N.E.2d 1368, 1371 (1989).

Ashland moves to dismiss on the ground that Massachusetts law does not authorize law suits based on a public policy exception to at-will employment contracts because the STAA provides Briones a specific and comprehensive remedy. Ashland relies on the holding in *Melley v. Gillette Corporation,* 397 Mass. 1004, 491 N.E.2d 252 (1986), in which the Massachusetts Supreme Judicial Court held that a former employee was barred from bringing an action against her employer for age discrimination other than under the procedures provided by M.G.L. ch.151B. *See also Valerio v. Putnam Associates Inc.,* 173 F.3d 35, 46 (1st Cir.1999) (relying on the SJC's reasoning in *Melley* to deny an employee's simultaneous invocation of the common law public policy exception for wrongful termination along with her request for statutory relief under the Federal Labor Standards Act of 1938, § 7(a)(1), 29 U.S.C. § 207(a)(1)).

■ Briones responds that Massachusetts requires employees to follow administrative schemes in lieu of filing a common law claim only when the relevant statute provides comprehensive and adequate remedies. Briones argues that the STAA does not provide him with an adequate remedy.

The cases Ashland relies upon do not establish an impenetrable rule mandating dismissal of state law claims alleging wrongful termination in violation of public policy simply because a federal or state statute relative to the subject exists. Rather, the Massachusetts courts have developed a logical preference that plaintiffs relying on a public policy already codified in a particular statute follow the procedures set forth in the statute, but only if the statutory remedies are comprehensive and adequate.

■ The STAA does not provide a remedy which would grant Briones all the relief he would be entitled to if he prevailed in his common law cause of action. For example, Briones seeks damages for emotional distress in addition to lost wages. The STAA's remedies, however, appear limited to payment of "compensatory damages, including back pay." 49 U.S.C. § 31105(3)(A)(iii). In sum, Ashland

has failed to show that Briones' claim is unauthorized by Massachusetts law.

## II. Preemption

 Ashland moves alternatively to dismiss on the grounds that the STAA preempts the common law wrongful discharge cause of action. Ashland argues that because Congress has already created a comprehensive remedial provision in the STAA, Briones' state claim is inconsistent with Congress's intent. Briones responds that federal law preempts state law only if there is express language noting Congress's intent to do so or if the logical interpretation of the statute would suggest preemption. The statute provides in pertinent part: "an employee alleging discharge ... *may* file a complaint with the Secretary of Labor not later than 180 days after the alleged violation occurred." 49 U.S.C. § 31105(b) (emphasis added). Briones stresses that the permissive language of the STAA makes it clear that Congress did not intend to preempt state law.

 The STAA does not preempt Briones' common law cause of action. Preemption analysis begins with the significant presumption that Congress did not intend to displace state law. *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). The Supreme Court has emphasized: "Where ... the field which Congress is alleged to have preempted includes areas that have been traditionally occupied by the States, congressional intent to supersede state laws must be clear and manifest." *English v. General Elec. Co.*, 496 U.S. 72, 79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990) (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977), quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S., at 230, 67 S.Ct. 1146). Moreover, "[t]he critical question

in any preemption analysis is always whether Congress intended that federal regulation supersede state law." *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 369, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986).

Several factors indicate that Congress did not intend the STAA to preempt state law causes of action for wrongful discharge. First, the text of the STAA provides that an employee "*may* file a complaint with the Secretary of Labor." 49 U.S.C. § 31105(b) (emphasis added). This language is permissive, not mandatory, and does not establish filing with the Secretary of Labor as the employee's exclusive forum to seek relief. The use of the word "may" suggests that complainants have an option of filing a complaint with the Secretary or seeking other available remedies for their injuries. *See Norris v. Lumbermen's Mut. Cas. Co.*, 881 F.2d 1144, 1147 (1st Cir.1989) (finding Congress did not intend the whistle blower provision of the Energy Reorganization Act ("ERA")), 42 U.S.C. § 5851, to preempt state tort law claims. Noting the permissive language in the provision the *Norris* court interpreted the ERA's provision that an aggrieved employee "may ... file ... a complaint with the Secretary of Labor" as proof that Congress did not intend to preempt state law. *Norris v. Lumbermen's Mut. Cas. Co.*, 881 F.2d at 1147. The language of the ERA is identical on this point to the language of the STAA, which similarly illustrates the lack of Congressional intent to preempt.

Second, the legislative history of the STAA strongly supports the contention that Congress did not intend to preempt state law. During the debate on the enactment of the STAA, Senator Charles Percy expressed his concern surrounding the preemptive effect of the STAA over "other avenues of relief and remedies that

might be available to employees under union contracts, or statutory or common law." Cong. Rec., 32511 (daily ed. Dec. 19, 1982). In response, Senator John Danforth, the principal author of the STAA, answered that "the driver protection provisions of title IV are most certainly intended to strengthen, not displace, any existing remedies employees may have at law." Cong. Rec., 32511 (daily ed. Dec. 19, 1982). These excerpts indicate that the STAA was not enacted to preempt state law remedies for retaliation against an employee who refuses to violate safety provisions. *See Parten v. Consolidated Freightways Corp.*, 923 F.2d 580, 583 (8th Cir.1991)(STAA was not an obstacle to Minnesota public policy statute and that Congress did not intend to occupy the entire field of interstate motor carriers); *Germann v. Vulcan Materials Co.*, 106 F.Supp.2d 1010, 1014 (S.D.Cal.2000) (state court action for wrongful termination in violation of public policy not preempted by STAA); *Whitworth v. TNT Bestway Transp., Inc.*, 914 F.Supp. 1434, 1436 (E.D.Tex.1996) (Texas Whistleblower's Act not preempted by the STAA).

Finally, the remedies available under the STAA's remedial provisions are not co-extensive with the state law remedies. As indicated above, the remedies afforded by the STAA do not include emotional distress damages. Faced with the question whether a similar provision of the ERA preempted an employee's action under Massachusetts common law for wrongful discharge, the Court of Appeals found the state claim was not preempted. *Norris v. Lumbermen's Mutual Casualty Co.*, 881 F.2d 1144 (1st Cir.1989). More importantly, the Court of Appeals expressly championed the need for the supplemental state remedy of punitive damages to protect whistle blowers and deter violators. *See Norris*, 881 F.2d at 1151. "Allowing whistle blowers to proceed in state court indi-

rectly promotes ... safety by subjecting the employer to the threat of a substantial jury award if it retaliates against a whistle blower by wrongfully discharging him." *Norris*, 881 F.2d at 1151. Indeed, the Court of Appeals emphasized the importance of the supplemental state remedy, holding that availability of a state law action strengthened and expanded the public policy of protecting whistle blowers.

### III. Conclusion

Ashland's motion to dismiss is denied.

It is so ordered.